Filed 6/10/22  P. v. Gaytan CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | F080702 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. 19CMS0333) |
| JESUS VINCENT GAYTAN, JR., | **OPINION** |
| Defendant and Appellant. | |

-ooOoo-

APPEAL from a judgment of the Superior Court of Kings County.  Valerie R. Chrissakis, Judge.

Jonathan D. Roberts, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Eric L. Christoffersen and Robert C. Nash, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

Appellant Jesus Vincent Gaytan, Jr., was arrested following his ex-girlfriend's report to the police that he went to her house and attacked her.  Approximately two days after his arrest, appellant made several calls to his ex-girlfriend from jail, telling her to

"drop the charges please" because he was scared for his safety in jail. A jury convicted appellant of unlawfully attempting to prevent and dissuade a victim or witness of a crime from causing a complaint, indictment, information, probation and parole violation to be sought and prosecuted and assisting in the prosecution thereof (Pen. Code,[1] § 136.1, subd. (b)(2); count 3) and a misdemeanor count of disobeying a court order (§ 166, subd. (a)(4); count 4). In a bifurcated court trial, the court found true that appellant had suffered two prior strikes (§§ 1170.12, subds. (a)–(d), 667, subds. (b)–(i)), two prior prison terms (§ 667.5, subd. (b)), and two prior serious felonies (§ 667, subd. (a)(1)). The court sentenced appellant to the upper term of three years as to count 3, five years each for the prior serious felony enhancements, and 180 days to be served concurrently as to count 4, for a total prison sentence of 13 years. The court stayed the two one-year terms for the prior prison term enhancements.

Appellant raises several contentions that he asserts necessitate reversal of his conviction on count 3. First, he contends the evidence was insufficient to support the conviction because, according to appellant, section 136.1, subdivision (b)(2) (§ 136.1(b)(2)) does not apply to attempts to dissuade a victim that occur after the victim has made a report and an arrest has been made. He contends that to interpret the statute in a way to encompass attempts to dissuade that occur after a victim has reported a crime is contrary to relevant case law as well as the language of the statute and raises due process, equal protection, free speech, and vagueness issues both facially and as applied to him. Appellant also contends the court misinstructed the jury as to the elements of section 136.1(b)(2) because the pattern instruction used in the present case, CALCRIM No. 2622, misstates the law.

Appellant further contends the court erred by denying a motion for mistrial made on the ground he was incurably prejudiced by brief references to his criminal history and

---

[1] All further undesignated statutory references are to the Penal Code.

parole status and by failing to sanitize appellant's prior convictions admitted during his testimony, and the prior prison term enhancements should be stricken pursuant to Senate Bill No. 136 (2019-2020 Reg. Sess.).

We strike appellant's prior prison term enhancements and affirm the judgment in all other respects.

## FACTS

Appellant was charged with injuring a domestic partner (§ 273.5, subd. (a); count 1); first degree burglary (§ 459; count 2); unlawfully attempting to prevent and dissuade a victim or witness of a crime from causing a complaint, indictment, information, probation and parole violation to be sought and prosecuted and assisting in the prosecution thereof (§ 136.1(b)(2); count 3); and a misdemeanor count of disobeying a court order (§ 166, subd. (a)(4); count 4). The jury acquitted appellant of counts 1 and 2 and convicted him of counts 3 and 4. We include the facts presented at trial underlying counts 1 and 2 as they are relevant to understanding counts 3 and 4 and to our analysis of appellant's claims on appeal.

**Counts 1 and 2: The Offenses Underlying the Dissuasion Count**

Allyshia Sandoval testified she dated appellant on and off from 2015 until they broke up in January 2019. At the time they broke up, Sandoval was pregnant with appellant's child. Sandoval stated the reason they broke up was because appellant had cheated. While appellant and Sandoval were together, he lived with her part time and had belongings at her house, which, around the day after they broke up, Sandoval threw out of the house. A few days later, on January 22, 2019, she and appellant were texting about the baby. Appellant began to ask her for his belongings, and she informed him that she threw them out.

Later that evening, appellant went to Sandoval's apartment and knocked on the door. He eventually stopped and attempted to enter her apartment through the kitchen window but was unsuccessful. Sandoval called the police and then heard banging on the

3.

door. At some point, she believed appellant had gone so she cracked the door to go check on her neighbor, Ashley Karasti. When she did so, appellant's new girlfriend kicked the door in. Appellant was on Sandoval's porch. According to Sandoval, appellant's girlfriend attacked Sandoval, and appellant joined her. They both hit and kicked Sandoval. Sandoval yelled for help from Karasti, who subsequently went over.

Karasti testified that on the night in question, she saw appellant and appellant's girlfriend approaching the door to Sandoval's apartment. She eventually heard noises and went to Sandoval's apartment. Sandoval's door was wide open, and Karasti saw appellant on top of Sandoval punching her and holding her down. Karasti ran up to him and asked him to get off Sandoval. Karasti testified that both appellant and appellant's girlfriend were "attacking" Sandoval. Appellant and his girlfriend eventually left in a vehicle being driven by a third party.

The officer who responded to the scene contacted Sandoval and Karasti. Sandoval had visible injuries to her face and head. Sandoval and Karasti identified appellant and his girlfriend as the perpetrators and indicated they had already left the scene. Sandoval obtained an emergency protective order against appellant based on the incident.

Detective Osvaldo Maldonado testified appellant was found and taken into custody three to four days after the incident. Maldonado served appellant with the emergency protective order and spoke to him about the incident. Appellant admitted to Maldonado he had had a text exchange with Sandoval on the night of the incident and was aware Sandoval reported he and his new girlfriend attacked her. Appellant, however, denied going to Sandoval's apartment and denied the entire incident happened. He stated he was at his mother's house in Hanford and it would have been impossible to get to Sandoval's home because he did not have a car. Appellant did not have an explanation as to how Sandoval got injured.

Appellant testified in his defense and admitted he went to Sandoval's apartment on the night in question in order to get his belongings. He had been with his new girlfriend

4.

at his grandmother's house. His girlfriend was waiting for a ride to take her home, and he asked the ride to take him to Sandoval's apartment. Appellant knocked on Sandoval's door, and Sandoval refused to give appellant his belongings, so he decided to leave. When he got back to the car, his girlfriend stated that she would get appellant's belongings and she proceeded to bang on and kick Sandoval's door. Appellant followed her but remained on the porch. Eventually, Sandoval opened the door, and appellant's girlfriend pushed the door open and assaulted Sandoval. Appellant just "st[ood] back watching." When asked why he told Maldonado he was not present during the incident, appellant explained "five year old[s]" deny doing something when they are caught "red handed," and adults do so as well. He further explained "from previous encounters, I just know to just deny any accountability." Appellant testified he had been convicted of two previous felonies and pled guilty to both "because I knew I was guilty of these crimes."

**Counts 3 and 4: Dissuasion and Violation of the Restraining Order**

Approximately two days after appellant was arrested, he made a series of phone calls from jail to Sandoval. The calls were played for the jury. The first was on January 26, 2019, at 3:52 p.m., which Sandoval did not accept. The next day, January 27, 2019, at 11:46 a.m., appellant called again, and Sandoval did not accept. One minute later, at 11:47 a.m., appellant called again, and Sandoval answered. When she answered, appellant said:

> "Dude I'm not gonna – I'm not fuckin' around right now dude, like, if I hit this pod dude, they will – they are gonna fuckin' whack me. I need you to drop these charges please. I'm not fuck–"

Sandoval then ended the call. At 11:51 a.m., appellant called again, and said:

> "Dude I'm – I'm sorry for what I did or for what I didn't do but I don't deserve this dude. I understand what I did was wrong. It was fucked to you but dude, like, I don't deserve this. You know what I'm sayin'. I don't deserve my life to be fuckin' taken away from me in here out of all fuckin' places dude."

Sandoval hung up the call.  At 12:00 p.m., appellant called again.  When she answered, they had the following conversation:

> "[APPELLANT]:  Dude please I'm begging you.  Let me get the repercussions that I need from out there, not in here.  Please.  Dude as soon as I hit that fuckin' pod dude I'm done.  Does that mean anything?  Doesn't that mean anything to you at all, anything?
>
> "[SANDOVAL]:  My baby's life didn't mean anything to you.
>
> [APPELLANT]:  So then you're just gonna let me just get killed in here huh?  That's what you're gonna let happen to me?  Just gonna get killed in here?  You know what, I'm – I'm sorry.  I truly am.  You know, I guess this will be the last conversation anyone will ever fuckin' hear from me.  I truly am sorry."

The call then ended.

The prosecution also entered the emergency protective order into evidence.  It restrained appellant from contacting Sandoval either directly or indirectly.  During his testimony, appellant admitted to violating the protective order by calling Sandoval from jail.

## DISCUSSION

### I.  Sufficiency of the Evidence—Count 3

Section 136.1(b)(2) prohibits attempting to prevent or dissuade any victim or witness of a crime from "[c]ausing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1(b)(2).)

Appellant contends the evidence was insufficient to support his conviction under section 136.1(b)(2) because the statute only applies to attempts to prevent or dissuade a witness or victim from making an initial report.  We disagree with appellant's claim and conclude sufficient evidence supported his conviction.

In assessing sufficiency of the evidence claims, "we review the whole record to determine whether *any* rational trier of fact could have found the essential elements of the crime or special circumstances beyond a reasonable doubt." (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) We look for substantial evidence, which is evidence that is reasonable, credible, and of solid value. (*Ibid*.) We review the evidence "in the light most favorable to the prosecution and presume in support of the judgment the existence of every fact the jury could reasonably have deduced from the evidence." (*Ibid*.)

We review issues of statutory construction de novo. (*People v. Gonzales* (2018) 6 Cal.5th 44, 49.) Our goal is to determine the legislative intent of the statute. "Because the statutory language is generally the most reliable indicator of that intent, we look first at the words themselves, giving them their usual and ordinary meaning." (*Alford v. Superior Court* (2003) 29 Cal.4th 1033, 1040.) When the statutory language is unambiguous, its plain meaning controls. We also "generally must 'accord[] significance, if possible, to every word, phrase and sentence in pursuance of the legislative purpose,' and [the California Supreme Court] ha[s] warned that '[a] construction making some words surplusage is to be avoided.' " (*People v. Valencia* (2017) 3 Cal.5th 347, 357.) Where the language supports more than one reasonable construction, we may look to extrinsic aids, including the legislative history, for additional guidance. (*People v. Ruiz* (2018) 4 Cal.5th 1100, 1105–1106.) Finally, in exceedingly rare situations, the literal meaning of the statutory language may be disregarded to avoid absurd results. (*People v. Bell* (2015) 241 Cal.App.4th 315, 351.)

In applying the above principles, we conclude that section 136.1(b)(2) is not limited to "pre-reporting" attempts to dissuade, as appellant suggests. The plain language of the statute in no way indicates the prohibited conduct must take place before a witness or victim makes an initial report. Appellant asserts, however, and bases several of his contentions on this assertion, that the statute only applies to initial reports because the only way a witness can, in his words, "cause" a prosecution to be "sought" is by making

an initial report. In making this assertion, appellant excludes key words from the statute, and does so repeatedly throughout his briefing. The problem with appellant's claim is that the statute does not prohibit behavior dissuading a witness from causing a prosecution simply to be "sought," but "sought *and* prosecuted" "*and* assisting in the prosecution thereof." Appellant's oversight of this language is significant, as this language represents clear intent to include more than just an initial report of a crime, and appellant's interpretation renders the words "and prosecuted" and "and assisting in the prosecution thereof" surplusage.

Further harmful to appellant's claim is that courts have reasonably interpreted "sought and prosecuted" as "filed." As the court in *People v. Reynoza* (2022) 75 Cal.App.5th 181, review granted May 11, 2022, S273797 (*Reynoza*), recently explained: "[T]he legislative history makes clear that legislators understood [the term 'sought and prosecuted'] to refer to the filing of a[n accusatory pleading]. The bill analysis generated by the Assembly Committee on Criminal Justice described this subdivision as 'covering the prevention or dissuasion or attempts from … [c]ausing an accusatory pleading to be filed, or parole or probation report sought.' [Citation.] Similarly, the report of the Senate Committee on Judiciary described the subdivision as making it a crime 'to dissuade or attempt to dissuade a person from … [c]ausing an accusatory pleading to be filed.' " (*Id.* at pp. 188–189; see *People v. Brown* (2016) 6 Cal.App.5th 1074, 1082 (*Brown*) ["the prevention [charged in a § 136.1(b)(2) prosecution] must occur before the relevant charging document has been filed"].[2]) Appellant's claim that section 136.1(b)(2) only applies to attempts of dissuasion cannot be reconciled with this reasonable interpretation. The filing of a charging document

---

**2**     Appellant criticizes *Brown's* interpretation of "sought and prosecuted" to mean filed, but his argument is based on his repeated insistence "sought" does not mean "filed." Appellant, as we have stated in the body of the opinion, ignores the full phrase "sought and prosecuted," and we reject appellant's criticism of *Brown* on this point.

necessarily happens after an initial report has been made. This is particularly illustrated by the fact that one of the documents listed in the statute is an information, which, by statute, can only be filed after a complaint has been filed and a preliminary hearing has been held, and the court has held the defendant to answer to the charges. (§ 738.)[3]

While we agree that "sought and prosecuted" means "filed," under section 136.1(b)(2), we note that what is relevant is not whether a complaint, indictment, information, or any other charging document actually is filed or even contemplated, it is whether the defendant acted with the specific intent to prevent or dissuade the witness from "causing a complaint, indictment, information … to be sought and prosecuted, and assisting in the prosecution thereof." (§ 136.1(b)(2).) The *Brown* court explains this aspect of the offense by stating, "Because preventing prosecution can be committed by a mere attempt to prevent prosecution, presumably it could be committed after the charging document was filed, as long as the defendant did not *know* the charging document had been filed and still *intended* to prevent it from being filed." (*Brown*, *supra*, 6 Cal.App.5th at p. 1082, fn. 3; *Reynoza*, *supra*, 75 Cal.App.5th at p. 189, quoting *Brown*.) Of course, on the other hand, where the charged conduct takes place after a charging document has been filed, and there is no evidence the defendant did not know and no evidence the defendant had the intent to dissuade a witness from causing any other charging document or an amended charging document to be filed, he or she cannot be convicted of section 136.1(b)(2). (See *Reynoza*, at pp. 186–187.)[4]

---

[3] "Before an information is filed there must be a preliminary examination of the case against the defendant and an order holding him to answer made under Section 872. The proceeding for a preliminary examination must be commenced by written complaint, as provided elsewhere in this code." (§ 738.)

[4] The Supreme Court has recently granted review of *Reynoza* to address the issue: "Does Penal Code section 136.1, subdivision (b)(2), which prohibits dissuading or attempting to dissuade a victim or witness from causing a charging document 'to be sought and prosecuted, and assisting in the prosecution thereof,' encompass attempts to dissuade a victim or witness after a charging document has been filed?"

Appellant asserts that *Brown's* focus on when a charging document is filed creates due process and equal protection issues because the filing of a charging document is an event over which neither the defendant nor the witness/victim has any control, and as such, we must read section 136.1(b)(2) as applying to "pre-reporting" attempts at dissuasion only. In making these arguments, appellant is singularly focused on the timing of the filing of the charging document and does not take into account the statute in its entirety, particularly, its intent element. In focusing on the timing of the filing of the charging document, *Brown* and later *Reynoza* appear to be highlighting that the statute is intended to target conduct related to a specific stage in the prosecutorial process—the filing of a charging document. Since the perpetrator must *intend* to prevent a witness or victim from causing a charging document to be filed, the conduct must, *incidentally*, take place before that point. Neither court, nor do we, however, suggest that *any* attempt characterized as dissuasion occurring before a charging document is filed is a violation of the statute based solely on the fact it takes place before the filing. The defendant's intent must be to prevent prosecution. Similarly, simply because a charging document is filed does not mean that the statute cannot be violated if the defendant harbors the requisite intent. Again, the focus is on the intent of the perpetrator, an element that appellant overlooks to the detriment of his claim.

We find no due process issue arises from not limiting section 136.1(b)(2) solely to attempts to dissuade initial reports because, as we have stated, the relevant issue is not whether the charging document has actually been filed, but the defendant's subjective belief as to whether it has been, in addition to his *intent* to prevent it from being filed. In any event, as respondent points out, any member of the public, including criminal suspects and those in custody, can readily ascertain whether a charging document has been filed against them. Accordingly, appellant's claim that due process is implicated because a defendant cannot know whether he or she is violating the statute because he "is in no position to know whether a complaint has been filed … or not" is without merit.

For similar reasons, we reject appellant's contention that an interpretation of "sought and prosecuted" as "filed," raises equal protection issues. He contends the statute creates unequal treatment of two similarly situated groups: (1) a defendant who believes a charging document has not been filed and attempts to dissuade a witness in violation of the statute; and (2) a defendant who believes a charging document *has* been filed and makes the same attempt to dissuade a witness, thus believing he or she is committing not a potentially felony violation of section 136.1(b)(2), but a misdemeanor violation of section 137, subdivision (c), inducing a witness to "withhold true material information pertaining to a crime from, a law enforcement official." Appellant has not met the threshold requirement of an equal protection claim that the statute has " 'adopted a classification that affects two or more *similarly situated* groups in an unequal manner.' " (*People v. McKee* (2010) 47 Cal.4th 1172, 1202.) Section 136.1(b)(2) does not affect a person who believes a charging document has already been filed because they cannot by the plain language of the statute have the intent required to prevent it from being filed.

Appellant also argues the placement of section 136.1(b)(2) in relation to section 136.1, subdivision (b)(1) (§ 136.1(b)(1)) and (b)(3) (§ 136.1(b)(3)) compels an interpretation that section 136.1(b)(2) only applies to "pre-reporting" attempts to dissuade. Section 136.1, subdivision (b) (§ 136.1(b)) reads as follows:

> "(b) Except as provided in subdivision (c), every person who attempts to prevent or dissuade another person who has been the victim of a crime or who is witness to a crime from doing any of the following is guilty of a public offense and shall be punished by imprisonment in a county jail for not more than one year or in the state prison:

> "(1) Making any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge.

11.

"(2) Causing a complaint, indictment, information, probation or parole violation to be sought and prosecuted, and assisting in the prosecution thereof.

"(3) Arresting or causing or seeking the arrest of any person in connection with that victimization."

Appellant argues that section 136.1(b)(1) and (b)(3) "clearly apply to pre-reporting acts of dissuasion"; therefore, as appellant reasons, section 136.1(b)(2) must too. Because we find appellant's claim to be defeated by the plain language of the statute, we reject appellant's claim at the outset, but it also fails because his premise is not true. While we agree that section 136.1(b)(1) clearly refers to making a report, in our view, section 136.1(b)(3) does not necessarily encompass an initial report, and certainly does not "clearly" do so. Just to present one hypothetical, a defendant could reasonably be guilty of section 136.1(b)(3) where a victim of an assault calls the police and makes an initial report, but the defendant attempts to dissuade them from causing that defendant's arrest before the police arrive.

Appellant also argues we should "follow" cases which he contends have characterized section 136.1(b) in its entirety as applying to attempts to dissuade initial reports to law enforcement, primarily *People v. Fernandez* (2003) 106 Cal.App.4th 943 (*Fernandez*), *People v. Navarro* (2013) 212 Cal.App.4th 1336 (*Navarro*), and *People v. Brackins* (2019) 37 Cal.App.5th 56 (*Brackins*). None of these cases assist appellant.

In *Fernandez*, the court held that section 136.1(b)(1), which penalizes attempts to prevent or dissuade a victim or witness from "[m]aking any report of that victimization to any peace officer or state or local law enforcement officer or probation or parole or correctional officer or prosecuting agency or to any judge," does not include an attempt to influence a victim's testimony at a preliminary hearing. *Fernandez* declined to interpret section 136.1(b)(1) as punishing "efforts to prevent or influence *testimony*" when it did not "do so expressly" and other statutes covered such conduct. (*Fernandez*, *supra*, 106 Cal.App.4th at p. 950, italics added.) In conducting its analysis of section

12.

136.1(b)(1), *Fernandez* stated that "section 136.1, subdivision (b) punishes a defendant's pre-arrest efforts to prevent a crime from being reported to the authorities." (*Fernandez*, at p. 950.)[5]

In *Navarro*, the appellate court addressed a freedom of speech challenge to section 136.1(b)(1), and in analyzing and ultimately rejecting the claim, it relied on identifying a strong government interest in "supporting and protecting citizens who wish to report violations of its criminal laws." (*Navarro, supra*, 212 Cal.App.4th at p. 1349.) The court also stated in its analysis that "[s]ection 136.1, subdivision (b) protects and supports persons seeking to report crimes," and "does not single out or target speech, but proscribes any conduct geared toward impeding a person from reporting a crime." (*Id.* at pp. 1349, 1350.)

In *Brackins*, the defendant was charged with a violation of section 136.1(b)(1) but requested a modification of the jury instructions to include a malice element, which is an element of section 136.1, subdivision (a)—dissuading a victim or witness from attending or giving testimony at a trial. (*Brackins, supra*, 37 Cal.App.5th at pp. 64–65.) The appellate court rejected the defendant's argument that there was " 'no logic' " to the Legislature's omission of a malice element from section 136.1(b). (*Brackins*, at p. 65.) The appellate court reasoned that the omission of the malice element from section

**5**    We note that in making this statement, *Fernandez* relied on *People v. Hallock* (1989) 208 Cal.App.3d 595, where the defendant was charged with "by means of force and threats of unlawful injury to person and damage to the property of herself and another, from *making a report* of such victimization to a peace officer, state and local law enforcement officer, probation, parole, and correctional officer, prosecuting agency, and judge; and *arresting and causing and seeking the arrest of a person* in connection with such victimization, in violation of Section 136.1(c)(1) of the Penal Code" (*Hallock*, at pp. 605–606, italics added) or, simply stated, section 136.1(b)(1) and (b)(2) by means of force and threats. The jury was instructed, however, with language from section 136.1, subdivision (a), dissuading a witness from giving testimony. In comparing the charges with the jury instructions, the court used section 136.1(b) as shorthand when referring to the charges. (*Hallock*, at pp. 595, 605–607.) *Hallock* did not address section 136.1(b)(2).

136.1(b) was reasonable because in including a malice element in section 136.1, subdivision (a), it may have been concerned, for example, about potentially criminalizing an employer who intentionally prevented an employee from testifying at trial without a malicious desire to thwart the administration of justice. (*Brackins*, at p. 67.) "Section 136.1, subdivision (b)," on the other hand, according to the *Brackins* court "requires the perpetrator to intend to prevent a crime from even being reported by a victim or witness." (*Ibid.*)

*Fernandez*, *Navarro*, and *Brackins* do not advance and actually tend to harm appellant's claim. First, none of these cases construed the statute at issue or addressed the specific question presented by appellant. Thus, we do not consider any general statements contained in these cases that section 136.1(b) relates to attempts to dissuade a witness from reporting a crime to stand for the proposition that section 136.1(b)(2) only relates to the initial report of a crime. For this proposition, these statements are dictum. (See *In re Chavez* (2003) 30 Cal.4th 643, 656 [a decision is authority only for points actually considered and decided].)

Appellant acknowledges that *Fernandez*, *Navarro*, and *Brackins* do not squarely address section 136.1(b)(2), but insists the analysis conducted within them are persuasive as to his argument. We disagree. We do not view anything in these cases as precluding us from interpreting section 136.1(b)(2) as we have, in accordance with its plain language, nor compel us to limit section 136.1(b)(2) to attempts to dissuade a witness from making an initial report.

We acknowledge that section 136.1 is one of a number of statutes in part I, title 7, chapter 6 of the Penal Code, "which establishes a detailed and comprehensive statutory scheme for penalizing the falsification of evidence and efforts to bribe, influence, intimidate or threaten witnesses." (*Fernandez*, *supra*, 106 Cal.App.4th at p. 948.) We further acknowledge that *Fernandez* and other cases relied on by *Fernandez* interpreting these statutes, have limited them according to their specific language in order to avoid

14.

overlap in their application. (*Id.* at p. 950; *People v. Womack* (1995) 40 Cal.App.4th 926, 931; *People v. Hallock*, *supra*, 208 Cal.App.3d at p. 607.) We do not agree with appellant's contention, however, that by applying this principle to section 136.1(b)(2), we must conclude it only applies to attempts at dissuading an initial report. The analysis in *Fernandez* tends to undermine appellant's position. The court in *Fernandez* explained in the context of the issue before it: "[W]hen the Legislature intends to penalize an effort to influence or prevent *testimony*, or an effort to prevent the defendant from appearing in court, it does so *explicitly*. Section 136.1, subdivision (b)(1) makes no reference to testimony or courtroom appearances." (*Fernandez*, at p. 949, 2nd italics added.) "Section 136.1, subdivision (b)(1) should not be construed to punish efforts to prevent or influence testimony *when it does not do so expressly, and there are other statutes within the same scheme that cover such conduct*." (*Id.* at p. 950, italics added.) The same applies here; it does not follow that section 136.1(b)(2) was intended to apply to dissuading an initial report because section 136.1(b)(1) expressly refers to "making a report." Had the Legislature intended section 136.1(b)(2) to only apply to initial reports, we believe it would have done so expressly. "Where the Legislature makes express statutory distinctions, ' "we must presume it did so deliberately, giving effect to the distinctions, unless the whole scheme reveals the distinction is unintended. This concept merely restates another statutory construction canon: we presume the Legislature intended everything in a statutory scheme, and we should not read statutes to omit expressed language or include omitted language." ' " (*In re Dakota H.* (2005) 132 Cal.App.4th 212, 225–226.)

Appellant insists that the analyses in *Navarro* and *Brackins* assist him because, as he asserts, they are dependent upon an interpretation that section 136.1(b) relates to initial reports. For example, appellant finds significant that the *Navarro* court rejected the appellant's free speech challenge in part because the state has a strong interest in witnesses and victims reporting crimes to law enforcement. Similarly, the *Brackins* court

15.

noted that because section 136.1(b)(1) required the defendant to have the specific intent to prevent a witness or victim from making a report, there was no danger that a defendant was doing so for a purpose other than to interfere with the prosecutorial process.

Appellant's reliance on *Navarro* and *Brackins* is misplaced. Any reference to initial reports to law enforcement were relevant to their analysis because they were discussing section 136.1(b)(1), which expressly discusses initial reports to law enforcement. These references do not persuade us that the *Navarro* and *Brackins* courts' analyses of section 136.1(b)(1) limit section 136.1(b)(2) to attempts to dissuade an initial report. Rather, in considering the analysis conducted in these cases, we find it can readily be *extended to* the conduct section 136.1(b)(2) is intended to target. Similar to the state's interest in protecting those who wish to report crimes in *Navarro*, the strong state interest in key witnesses and victims from participating so that a charging document can be filed is an equally compelling interest affecting the early stages of a criminal prosecution that justifies any alleged limit on speech the statute effects. And like in *Brackins*, section 136.1(b)(2) requires a specific intent to prevent a charging document from being filed, which is a direct intent to interfere with the prosecutorial process and, like the court reasoned in *Brackins*, eliminates the need for a malice requirement.

In summary, we reject appellant's claim that section 136.1(b)(2) applies only to attempts to dissuade a witness from making an initial report. It is belied by the plain language of the statute and reasonable interpretations by other courts. Appellant's arguments that the principles of statutory construction and potential issues with due process and equal protection compel us to read the statute as appellant asks are without merit. Finally, the cases appellant cites—particularly *Fernandez*, *Navarro*, and *Brackins*—are not persuasive to appellant's argument, and in our view, further support our ultimate conclusion.

We conclude appellant's conviction is supported by substantial evidence. Appellant called Sandoval, pleaded with her to "drop the charges," with the expectation

that her doing so would result in him being released from jail. The jury could reasonably infer from his statements he had the requisite intent to dissuade Sandoval from causing a charging document to be filed and assisting in its prosecution so that he would not face criminal action. We reject appellant's contention the People were required to provide evidence that a charging document had not been filed, as the focus, as we have explained at length, is the defendant's intent. We reject appellant's contention that his wording "drop the charges" indicated he believed charges already had been filed and thus meant he could not have had the requisite intent. In reviewing the evidence in the light most favorable to the judgment, we conclude a reasonable interpretation of appellant's statement does not necessarily include his belief that a charging document had been formally filed but rather an acknowledgement that Sandoval had made a report that resulted in his arrest, frequently referred to colloquially as "pressing charges," and therefore that "charges" were pending against him. The jury was not presented with evidence that appellant had been arraigned or had any knowledge of a charging document being filed. Such evidence would have been impossible to present because, in reality, the complaint was not filed until the day after appellant made the majority of his phone calls to Sandoval. Based on the facts of the case, the jury could have reasonably believed appellant intended to have Sandoval perform some action to fully exculpate appellant such as recanting or changing her report or notifying the police or prosecutor she would not be cooperating any further. This was sufficient to support appellant's conviction.

## II.     Section 136.1(b)(2) Alleged Constitutional Violations

Appellant contends several constitutional issues arise from interpreting section 136.1(b)(2) in a way that does not limit it to "pre-reporting" attempts at dissuasion, none of which he raised in the trial court. Nonetheless, we will consider them on their merits. "All issues, even those involving an alleged constitutional violation, are subject to the rule of forfeiture, and a defendant's failure to raise the issue before the trial court will generally result in the appellate court's refusal to consider it." (*Navarro*,

17.

*supra*, 212 Cal.App.4th at p. 1347, fn. 9.)  Notwithstanding this rule, we will consider the issue for the first time on appeal because the argument "[is] legal, [is] based on undisputed evidence, and center[s] on review of abstract and generalized legal concepts." (*Ibid*.)  We reject each of his constitutional claims.

### A.    *Free Speech*

Appellant argues that a construction of the statute to apply to post-reporting acts of dissuasion violates his rights to freedom of speech and expression, arguing that extending the statute to apply to post-reporting conduct is not narrowly tailored enough to achieve a government purpose.  We disagree.

"The First Amendment, applicable to the States through the Fourteenth Amendment, provides that 'Congress shall make no law … abridging the freedom of speech.'  The hallmark of the protection of free speech is to allow 'free trade in ideas'— even ideas that the overwhelming majority of people might find distasteful or discomforting.  [Citations.]  Thus, the First Amendment 'ordinarily' denies a State 'the power to prohibit dissemination of social, economic and political doctrine which a vast majority of its citizens believes to be false and fraught with evil consequence.' " (*Virginia v. Black* (2003) 538 U.S. 343, 358.)

In *Navarro*, the appellate court considered a free speech facial challenge to section 136.1(b)(1).  The *Navarro* court rejected the challenge in part because the statute's "focus on the mental state of the perpetrator and his or her intent to affect or influence a potential witness's or victim's report limits the statute's reach by distinguishing culpable conduct from innocent conversation and restrains use of its provisions to inhibit protected speech." (*Navarro*, *supra*, 212 Cal.App.4th at p. 1351.) Accordingly, "[o]rdinary citizens discussing the criminal justice system and the pros and cons of becoming involved in a police investigation would not run afoul of the law."  (*Id.* at p. 1352, fn. omitted.)  We agree with *Navarro* and believe the same reasoning applies to section 136.1(b)(2), as the statute contains a specific intent element that the conduct

must be intended to prevent a charging document to be filed. We reject appellant's assertion that *Navarro* was dependent upon and must be limited to its identification of the government interest implicated by the statute as protecting people who wish to report a crime, and as we have stated in our discussion of *Navarro* in Part I, *ante*, find the governmental interest protecting key witnesses or victims who wish to cooperate in initiating the prosecution of a crime to be equally compelling. Accordingly, we disagree with appellant's claims that our reading of section 136.1(b)(2) is not narrow enough so as to prevent a risk of criminalizing protected speech and conclude the statute does not facially violate the constitutional guarantee of free speech.

We also disagree with appellant that, as applied to him, the statute violates his right to freedom of speech or expression. He contends his statement was "an expression of his emotions and frustration with his situation, rather than any legitimate attempt to interfere with the prosecutorial process." We disagree. Appellant made several phone calls to Sandoval, in violation of a protective order, ignoring her attempts to end the calls without speaking to him. He pleaded with her to "drop the charges" so that he would not be killed in jail. He repeatedly told her he would lose his life if he were to remain in jail and was "begging" her. When she responded in a way suggesting she would not do anything to help, he responded, "So then you're just gonna let me just get killed in here huh? That's what you're gonna let happen to me?" It is abundantly clear from the circumstances of the present case that appellant was attempting to get Sandoval to take some action to get him out of jail by attempting to appeal to her emotions by suggesting if she did not, he would die. This was not a mere expression of frustration, but a clear attempt to keep Sandoval from cooperating with the prosecution so that a charging document could be filed.

**B.** *Vagueness*

Appellant also argues section 136.1(b)(2) does not provide adequate notice of the prohibited conduct and is therefore unconstitutionally vague in violation of his due process right. We disagree.

" 'The constitutional interest implicated in questions of statutory vagueness is that no person be deprived of "life, liberty, or property, without due process of law," as assured by both the federal Constitution (U.S. Const., Amends. V, XIV) and the California Constitution (Cal. Const., art. I, § 7). " 'Under both Constitutions, due process of law in this context requires two elements: a criminal statute must " 'be definite enough to provide (1) a standard of conduct for those whose activities are proscribed and (2) a standard for police enforcement and for ascertainment of guilt.' " ' " (*People v. Morgan* (2007) 42 Cal.4th 593, 605.) The California Supreme Court "has recognized 'the strong presumption that legislative enactments "must be upheld unless their unconstitutionality clearly, positively, and unmistakably appears. [Citations.] A statute … cannot be held void for uncertainty if any reasonable and practical construction can be given to its language." ' " (*Ibid.*) "Therefore, 'a party must do more than identify some instances in which the application of the statute may be uncertain or ambiguous; he must demonstrate that "the law is impermissibly vague *in all of its applications.*" ' " (*Id.* at pp. 605–606.) "Stated differently, ' "[a] statute is not void simply because there may be difficulty in determining whether some marginal or hypothetical act is covered by its language." ' " (*Id.* at p. 606.)

Appellant contends that "it is not at all clear what it means to dissuade a witness from 'causing' a complaint, (etc.) 'to be sought.' " He points out that because the *Fernandez*, *Navarro*, and *Brackins* courts have interpreted section 136.1(b) as a whole to apply to "pre-reporting acts of dissuasion" and other courts, such as *Brown*, have not done so, disagreements between the courts have arisen that demonstrate it would not be possible for the average person to adequately understand what section 136.1(b)(2)

20.

prohibits. We disagree for many of the reasons we have already discussed. First, in arguing it is not clear what it means to cause a charging document to be "sought," appellant again leaves out key words in the statute. Second, appellant overstates any disagreement between the Courts of Appeal.[6] As we have explained, we conclude the statute is clear—it prohibits *attempts* at preventing a witness or victim from causing a charging document to be filed and assisting in the prosecution thereof—this covers for example the conduct here, where appellant is attempting to persuade the sole victim in a

---

[6] One case appellant discusses at length and uses as an example of the disagreements between different appellate courts that we have not so far addressed is *People v. Velazquez* (2011) 201 Cal.App.4th 219. In *Velazquez*, the defendant was convicted of three violations of section 136.1(b)(2) for telling a victim of a crime to drop the charges against his fellow gang member. He argued on appeal that section 136.1(b)(2) was limited to prearrest efforts to prevent a crime from being reported, relying on *Fernandez*. *Velazquez* rejected the defendant's reliance on *Fernandez* but, in doing so, commented that "Subdivision (b)(2) clearly encompasses more than prearrest efforts to dissuade, inasmuch as it includes attempts to dissuade a victim from causing a complaint or information to be prosecuted *or* assisting in that prosecution." (*Velazquez*, at pp. 232–233, italics added.) Appellant criticizes *Velazquez* for suggesting the statute could be violated either by causing a charging document to be filed "or" assisting in the prosecution, which could allow a prosecution under section 136.1(b)(2) at any stage of the prosecution, which is not a sufficiently narrow reading of the statute.

The *Reynoza* court made a similar criticism of *Velazquez*. We agree with this criticism to an extent. The statute clearly contains the conjunctive "and" between the phrase "causing [a charging document] to be sought and prosecuted" and the phrase "assisting in the prosecution thereof," which cannot be ignored or interpreted as the disjunctive "or." We do not agree, however, that *Reynoza's* criticism of *Velazquez* represents a disagreement that compels us to accept appellant's claim the statute is unconstitutionally vague. We do not believe the *Velazquez* court relied on the disjunctive use of the statute in the case before it, as we note that although the arraignment in that case had been held, there was no evidence a preliminary hearing had been held and, therefore, no evidence an information had been filed. The issue before the court in *Velazquez* was whether the statute applies to the timeframe before an arrest, not the specific issue appellant raises here. We do not disagree with the *Velazquez* court's conclusion but, to the extent it reads the statute in a disjunctive form rather than conjunctive form, we respectfully disagree, as such a reading is at odds with the plain language of the statute.

crime to prevent the filing of a charging document, so as to prevent altogether the prosecution of an alleged crime.

Appellant also contends the statute is unconstitutionally vague as applied to the facts of this case because he "would not have understood that his post-arrest call to Sandoval would constitute an attempt to dissuade Sandoval from 'causing' a complaint 'to be sought[,]' " contending Sandoval had already caused a complaint to be "sought." Appellant again fails to read the statute in its entirety and ignores the rest of the phrase— "sought and prosecuted." As we have stated, the reasonable interpretation of "sought and prosecuted" includes the filing of the relevant charging document and thus extends to postreporting attempts at dissuasion and clearly encompassed the behavior here.

## III. Jury Instructions

The jury was instructed with the pattern instruction for dissuading a witness from prosecuting a crime—CALCRIM No. 2622—as follows:

> "The defendant is charged in Count 3 with dissuading a witness in violation of Penal Code section 136.1(b)(2).
>
> "To prove that the defendant is guilty of this crime, the People must prove that:
>
> > "1. The defendant tried to prevent or discourage Allyshia Sandoval from cooperating or providing information so that a complaint, indictment or information could be sought and prosecuted. and from helping to prosecute that action;
> >
> > "2. Allyshia Sandoval was a crime victim;
> >
> > AND
> >
> > "3. The defendant knew he was trying to prevent or dissuade Allyshia Sandoval from cooperating or providing information so that a complaint, indictment or information could be sought and prosecuted, and from helping to prosecute that action and intended to do so.

"A person is a *crime victim* if there is reason to believe that a federal or state crime is being or has been committed or attempted against him or her.

"It is not a defense that the defendant was not successful in preventing or discouraging the crime victim.

"It is not a defense that no one was actually physically injured or otherwise intimidated."

Though appellant did not object to the instruction at trial, we will consider the merits of his claim, as he contends the trial court misinstructed the jury on the elements of the offense. Defendants may assert instructional error on appeal when it affects their substantial rights. (§ 1259 ["appellate court may … review any instruction given, refused or modified … if the substantial rights of the defendant were affected thereby"]; *People v. Coffman and Marlow* (2004) 34 Cal.4th 1, 103, fn. 34 [permitting a defendant to raise instructional error in accomplice instructions where the defendant did not object to instruction at trial].) " '[T]he trial court's duty to fully and correctly instruct the jury on the basic principles of law relevant to the issues raised by the evidence in a criminal case is so important that it cannot be nullified by defense counsel's negligent or mistaken failure to object to an erroneous instruction or the failure to request an appropriate instruction. [Citation.]' (*People v. Avalos* (1984) 37 Cal.3d 216, 229.)" (*People v. Johnson* (2016) 243 Cal.App.4th 1247, 1267.)

"We review de novo whether jury instructions state the law correctly." (*People v. Jackson* (2010) 190 Cal.App.4th 918, 923.) " 'When an appellate court addresses a claim of jury misinstruction, it must assess the instructions as a whole, viewing the challenged instruction in context with other instructions, in order to determine if there was a reasonable likelihood the jury applied the challenged instruction in an impermissible manner.' " (*People v. Jennings* (2010) 50 Cal.4th 616, 677.) " '[W]e presume the jury understood and followed the court's instructions.' " (*People v. Erskine* (2019) 7 Cal.5th 279, 303.) If possible, we interpret the instructions "so as to support the judgment rather

23.

than defeat it if they are reasonably susceptible to such interpretation." (*People v. Laskiewicz* (1986) 176 Cal.App.3d 1254, 1258.)

Appellant contends that by replacing the word "causing" from the statutory language with "cooperating or providing information," the instruction is erroneous in two ways. First, appellant contends, the language is inconsistent with a statement in *Brown* where the court explained that " 'the victim must be so central to the case as to be able to *cause* the filing. Plenty of persons with material information about a crime are nevertheless not so central to it as to be in a position to cause, rather than merely assist, the prosecution.' " Second, appellant contends the word "causing" implies a temporal element which requires the conduct to have occurred at a time where it would have been possible to stop the prosecution from occurring.

We disagree that the CALCRIM pattern language changes the statute in a way that misstates the law. In making his argument, appellant ignores the full phrase that has replaced the word "causing" in the statute—"cooperating or providing information *so that* a complaint, indictment, or information *could be* sought and prosecuted…." The "so that … could be" language alleviates the issues presented by appellant, as they, in our view, fully encompass the meaning of "cause." The combination of "so that" and "could be" implies that Sandoval must have been reasonably central to the case that she could stop the prosecution and that the attempt must have occurred at a time before one of the named charging documents had been filed. It is not reasonably likely the jury would not have understood this concept from the instructions provided.

## IV.  **Mistrial Motion Denial**

### A.  *Relevant Background*

During jury selection, one of the prospective jurors indicated she was a probation officer and was not familiar specifically with appellant but was perhaps familiar with his family members. When the prospective jurors were later asked whether they had any legal training or experience, this prospective juror responded that she had written

24.

numerous presentence investigation reports for the court and had assisted in proofing and editing sentencing reports. The court then asked, "And let me just clarify on the record, have you ever written a sentencing report or had any other contact in any way with this defendant—with [appellant]?" The prospective juror responded, "I'm not sure. Gaytan sounds very familiar, but like I said, I—there is a lot of Gaytans locally, so he does not look familiar to me." The prospective juror went on to say she could not be sure she had not.

At the next break, counsel lodged an objection to the way the court asked the question, arguing the court "may have inadvertently prejudiced the jury by implying [appellant] has suffered prior convictions and has required probation reports to be written by the probation department." The court indicated it would give the jury a limiting instruction and asked whether counsel thought doing so would draw too much attention to the issue. Defense counsel stated he did not object to the instruction being given.

When the prospective jurors were back in the courtroom, the court instructed them as follows: "I just want to remind you all as we head into more questioning at this time that nothing said by the Court, counsel, or any other potential jurors during this voir dire process is evidence in this case and should not be used as such during any deliberations in this case."[7]

During Maldonado's testimony at trial, when outlining his attempt to locate appellant, he stated he spoke to appellant's "parole agent." Defense counsel objected. Following a bench conference, the court struck Maldonado's answer and instructed the jury to disregard it.

Five minutes later, Maldonado testified that as part of his investigation he spoke to appellant in a "parole building." Counsel again objected. The court struck the answer

---

[7] The prospective juror was excused. Appellant contends it is difficult to tell from the record how many ultimately-seated jurors were present for the exchange, but estimates it was at least seven.

25.

and instructed the jury to disregard the answer. The court subsequently called the lunch recess.

Following lunch, before the court called the jury back into the courtroom, defense counsel moved for a mistrial based on Maldonado's two suggestions appellant was on parole. After hearing arguments from counsel, the court denied the motion, concluding that appellant's chances of receiving a fair trial had not been irreparably damaged because curative admonitions had been given to the jury. The court noted that if there were to be another mention of appellant's criminal history, it would likely grant a mistrial motion.

**B.** *Analysis*

Appellant contends the court erred by denying appellant's mistrial motion based on the aforementioned brief references to his criminal history. We disagree.

"[A] motion for mistrial should be granted only when ' "a party's chances of receiving a fair trial have been irreparably damaged." ' " (*People v. Ayala* (2000) 23 Cal.4th 225, 282.) The court should grant a motion for mistrial if prejudice to the defendant arises that is " ' "incurable by admonition or instruction." ' " (*People v. Franklin* (2016) 248 Cal.App.4th 938, 955.) "[I]t is only in the 'exceptional case' that any prejudice from an improperly volunteered statement cannot be cured by appropriate admonition to the jury." (*Ibid*.) A trial court's ruling to deny a motion for mistrial is reviewed on appeal under the abuse of discretion standard. (*People v. Maury* (2003) 30 Cal.4th 342, 434.)

We conclude the court did not abuse its discretion by denying the mistrial motion. The brief and ambiguous references to appellant's potential interaction with probation or parole were stricken from the record and the jury was admonished not to consider them. Our Supreme Court has repeatedly found any prejudice arising from brief and ambiguous references to a defendant's past criminality can be cured by appropriate admonition to the jury and thus does not result in an error of constitutional magnitude. (See, e.g., *People v.*

26.

*Collins* (2010) 49 Cal.4th 175, 199 [a "brief and ambiguous" reference to a defendant's arrest and being in jail was curable by admonition]; *People v. Avila* (2006) 38 Cal.4th 491, 572–574 [any prejudice arising from witness's statement the defendant had "barely got[ten] out of prison" at the time of the offense was cured by admonition to " 'disregard that testimony and treat it as though you had never heard it. You shall not consider it for any purpose. In your deliberations you may not discuss or consider it' "]; *People v. Valdez* (2004) 32 Cal.4th 73, 128 ["brief and isolated" statement by witness that he had interviewed the defendant in jail did not warrant mistrial].)

Here, though appellant points out three references to probation or parole, we conclude, even in their totality, they were brief and ambiguous enough so as to be cured by the admonitions given by the trial court. The question by the trial court during jury selection was vague as to appellant's criminal history, directed solely at one prospective juror, and the prospective juror indicated she did not believe she had prepared any sentencing reports for appellant. In context, it is unlikely the seated jurors who were present during the exchange put much emphasis on the questioning particularly in light of the trial court's admonition. The trial references to parole were offhanded remarks made voluntarily by the witness and struck from the record by the trial court. The prosecutor did not bring up the references again and did not improperly use them to argue appellant was guilty. (Cf. *People v. Garcia* (2014) 229 Cal.App.4th 302, 312 [improper reference to the defendant's sexual orientation in a sex abuse trial was a violation of the defendant's due process rights where prosecutor used it to argue guilt].) They did not contain any details or even suggest appellant had suffered a criminal conviction; rather, as respondent points out, the references only suggested appellant had some interaction with parole.

We note that appellant cites several cases where evidence the defendant had been charged with or convicted of a prior crime was deemed incurable by admonition to the jury to disregard the evidence, such as *People v. Figuieredo* (1955) 130 Cal.App.2d 498,

505–506 [where a trial court denied defense counsel's motion to strike a police officer's references to the defendant having been in San Quentin, the defendant was deprived of a fair trial], *People v. Ozuna* (1963) 213 Cal.App.2d 338, 341–342 [a witness's reference to the defendant as an "ex-convict" was not curable by admonition], and *People v. Allen* (1978) 77 Cal.App.3d 924, 934–935 [the trial court erred in failing to grant the defendant's motion for mistrial after a witness testified appellant was "on parole" despite having stricken the testimony and admonished the jury]. These cases do not assist appellant. These cases all predate more recent controlling California Supreme Court precedent[8] that establishes brief and ambiguous references to prior criminality are curable by admonition. We also find these cases distinguishable because there the witnesses disclosed prior felony charges or convictions; here, as respondent correctly points out, the references in the present case only suggested appellant had some interaction with parole.

Even if we were to find error, we conclude any error was harmless under any standard. Appellant discusses at length in his briefing how references to criminal history can prejudice a defendant because of "two distinct tendencies of juries": (1) "the tendency to convict a man of the crime charged, not because he is guilty of that offense, but because evidence introduced indicates that he is a 'bad man' who should be incarcerated regardless of his present guilt"; and (2) "the tendency to infer that because the accused committed one crime, he is likely to have committed [the] crime charged."

Here, the jury found appellant not guilty of counts 1 and 2, the domestic violence and burglary charges. The victim, as well as a percipient witness, testified to these offenses, and appellant was recorded making statements to Sandoval such as he was sorry for "what [he] did" and that it was "wrong" and "f[...]ed," which could have reasonably been interpreted to connote consciousness of guilt. Detective Maldonado testified

---

**8**      See *Auto Equity Sales, Inc. v. Superior Court* (1962) 57 Cal.2d 450, 455 [decisions of the California Supreme Court are binding upon and must be followed by all state courts of California.]

28.

appellant denied being present at the scene altogether. During trial, appellant was impeached by the statement he gave Maldonado, and testified he was present at the time of the assault but did not enter Sandoval's home or participate in the physical assault against her. All this to say—we note that in our review of the cold record—the People's evidence of guilt was more than sufficient to support convictions in counts 1 and 2, but in context of the totality of the evidence presented to the jury, the jury clearly credited appellant's testimony over the other witnesses. Given the jury's verdicts, it is clear none of the alleged undue prejudice appellant identifies was present in this case. The jury clearly did not base its verdicts on their assumption that appellant was a "bad man" or that he was guilty of all crimes charged just because he had a criminal history.

## V.    Refusal to Sanitize Criminal Convictions For Impeachment

### A.    *Relevant Background*

Following the prosecution's case-in-chief, defense counsel announced appellant's decision to testify. Counsel asserted the decision was based on the court's denial of his mistrial motion, explaining that the defense felt the "damage has already been done" with regard to any prejudice the jury had toward appellant due to his criminal history.

At that point, the prosecutor moved to unbifurcate the trial. In response, appellant requested the court to "sanitize" appellant's priors during his testimony. Counsel requested the prior offenses be only referred to by their statutory numbers and not by their "common names," as they were "highly prejudicial."

The trial court heard argument on the issue and determined that because appellant was choosing to testify, the trial would be unbifurcated. The court found the admission of appellant's two prior convictions was appropriate for impeachment purposes and that the use of the common names was not unduly prejudicial as they were different than the crimes charged in the case.

During direct examination, appellant admitted to being convicted of carjacking and evading law enforcement in 2009 and assault with a deadly weapon in 2015. He testified to pleading guilty to the crimes because he "knew [he] was guilty."

**B.** *Analysis*

Appellant contends the court erred by declining to sanitize his prior convictions to be used for impeachment to exclude the use of the crimes' common names. We disagree.

A witness's felony convictions involving moral turpitude are admissible for impeachment purposes, subject to the court's discretion under Evidence Code section 352. (Evid. Code, § 788; *People v. Wheeler* (1992) 4 Cal.4th 284, 296; *People v. Castro* (1985) 38 Cal.3d 301, 306–307, 312.) A trial court may exercise its discretion to sanitize the descriptions of prior convictions where the nature of the unsanitized prior convictions would be more prejudicial than probative of the witness's credibility (*Castro*, at pp. 305–306; *People v. Massey* (1987) 192 Cal.App.3d 819, 825), such as where the impeaching offenses are similar or identical to the current charges (*People v. Foreman* (1985) 174 Cal.App.3d 175). We review the trial court's ruling on whether to exclude impeachment evidence under Evidence Code section 352 for abuse of discretion. (*People v. Green* (1995) 34 Cal.App.4th 165, 182–183.)

Appellant concedes the felonies were crimes involving moral turpitude and thus, according to his brief, "plainly admissible," but contends the names of the offenses were irrelevant because they did not have to do with honesty or veracity and, for that reason, the risk of undue prejudice outweighed the probative value.

The court did not abuse its discretion in refusing to sanitize the carjacking, evading law enforcement, and assault with a deadly weapon convictions. The crimes were probative to appellant's credibility as crimes of moral turpitude. Further, as the court stated, because they were not substantially similar to the crime charged, they were

not unduly prejudicial.[9]  Indeed, had the jury not been informed of the nature of the prior offenses, they may have speculated about them to appellant's detriment.  (See *People v. Massey*, *supra*, 192 Cal.App.3d at p. 825.)  Further, the court instructed the jury that if it determined appellant had been convicted of a felony, they "may consider that fact only in evaluating the credibility of the Defendant's testimony" and to "consider that evidence only for that purpose and for no other."  (CALCRIM No. 303.)

Finally, as with the denial of the mistrial motion, under any standard, we find any error harmless given the jury's verdict.  As we have explained, given its verdict, the jury was clearly not unduly prejudiced against appellant based on his prior criminal history.

## VI.    Section 667.5, Subdivision (b) Enhancements

In October 2019, the Legislature passed Senate Bill No. 136 (2019-2020 Reg. Sess.), amending section 667.5, subdivision (b) to state that a one-year term under that section shall only be imposed "for each prior separate prison term for a sexually violent offense …."  (Stats. 2019, ch. 590, § 1.)  Thus, Senate Bill No. 136 eliminated the prior prison term enhancement except in cases involving sexually violent offenses.  The law went into effect on January 1, 2020.  Appellant argues his one-year prior prison term enhancements must be stricken, and respondent agrees.

Effective January 1, 2022, Senate Bill No. 483 (2021-2022 Reg. Sess.) added section 1171.1, which provides that a section 667.5, subdivision (b) sentence enhancement imposed prior to January 1, 2020, except for one imposed for a prior sexually violent offense, is "legally invalid."  (Stats. 2021, ch. 728, § 3.)  Here, as appellant's prior prison terms were not imposed for sexually violent offenses, the

---

[9]    We acknowledge that in making its ruling, the court relied in part on the fact the trial would be unbifurcated, when in reality, it was ultimately bifurcated.  However, because the court also relied on an independent analysis of the potential undue prejudice, this did not constitute error under the circumstances of the case.

section 667.5, subdivision (b) enhancements imposed in this case are invalid and must be stricken.

## DISPOSITION

We strike the one-year section 667.5, subdivision (b) enhancements. The court shall direct an amended abstract of judgment to be prepared and forwarded to the appropriate authorities. In all other respects, the judgment is affirmed.

DE SANTOS, J.

WE CONCUR:

LEVY, Acting P. J.

MEEHAN, J.